UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. S1-4:21CR00717 MTS |
| CARLOS MARIO AGRESOTT SALAS, | ) |  |
| Defendant. | ) |  |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree as follows:

### 1. PARTIES

The parties are the defendant Carlos Mario Agresott Salas, represented by defense counsel John Stobbs, II, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts I and II of the Indictment, the Government agrees that no further federal prosecution will be brought in this District relative to the incident regarding defendant's drug trafficking activity as detailed in this plea agreement, and of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts I and II to forfeit to the United States all property subject to forfeiture under the applicable statute.

## 3. **ELEMENTS**

As to Count I, the defendant admits to knowingly violating Title 21, United States Code, Sections 960 and 963, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(a) Beginning at an unknown time, but not later than January 2020 and through the date of the Indictment, the defendant and his co-defendants, and/or other persons known and unknown to the government, reached an agreement or came to an understanding to distribute cocaine, a Schedule II controlled substance, intending, knowing and having reasonable cause to believe that such cocaine would be unlawfully imported into the United Sates from a place outside the United States; and

(b) That the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some time while it was still in effect; and

(c) That at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement; and

(d) The offense involved more than 5 kilograms of cocaine.

As to Count II, the defendant admits to knowingly violating Title 46, United States Code, Section 70506 and Title 21, United States Code, Section 960, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(a) Beginning at an unknown time, but not later than January 2020 and through the date of the Indictment, within the Eastern District of Missouri, the defendant and his co-defendants, and/or other persons known and unknown to the government, reached an agreement or came to an understanding to possess with the intent to distribute a mixture or substance containing cocaine, a Schedule II controlled substance, aboard a vessel subject to the jurisdiction of the United States; and

(b) That the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some time while it was still in effect; and

(c) That at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement; and

(d) The offense involved more than 5 kilograms of cocaine.

## 4. FACTS

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3.

Defendant Carlos Mario Agresott Salas conspired with co-defendants and others to distribute cocaine, intending, knowing, and having reasonable cause to believe that such cocaine would be unlawfully imported into the United States from the country of Colombia. Defendant Carlos Mario Agresott Salas also conspired with co-defendants and others to possess with the intent to distribute cocaine aboard a vessel subject to the jurisdiction of the United States.

Defendant Carlos Mario Agresott Salas (hereinafter Agresott Salas) and the co-defendants were members of a maritime drug trafficking organization (DTO) that operated in the Turbo region of northwestern Colombia. The DTO would manufacture, acquire, store and then transport the cocaine using go-fast vessels (GFVs). The GFVs would transport multi-hundred/thousand kilogram shipments of cocaine from Colombia through Central America, for ultimate importation into the United States. Defendant Agresott Salas and the other members of the DTO including the co-defendants were involved in numerous shipments of large amounts of cocaine via GFV from Colombia through Central America and into the United States as evidenced by the following load that was intercepted on June 17, 2021.

### A. June 17, 2021, seizure of 1,256 kilograms of cocaine

On June 17, 2021, Colombian law enforcement authorities were alerted through lawfully intercepted communications to the departure of a GFV laden with cocaine from the area of Zapata, Choco, Colombia. Later that same day, units from the Colombian Armada (Navy)

4

located the GFV, powered by two 200 HP outboard engines, traveling 12 miles north of Punta Carivana, Colombia. The Colombian Armada was able to deploy units and conducted an interdiction of the GFV. The interdiction resulted in the seizure of approximately 1,256 kilograms of cocaine and the arrest of four Colombian nationals. Through lawfully intercepted communications before and after the interdiction as well as witness statement, Colombian authorities tied the shipments to defendant Agresott Salas and others including the co-defendants.

On June 12, 2021, during a lawfully intercepted phone call between co-defendant Sepulveda Mona and defendant Agresott Salas, co-defendant Sepulveda Mona stated that they had to organize everything. Co-defendant Sepulveda Mona said to send "Flaco" to organize the issue with water and for defendant Agresott Salas to take the "car" (code for GFV) and out it with his "blood" (code for family member). Defendant Agresott Salas asked which side Tri or Za (referring to Trigana and Zapata, both locations in Colombia used by departing GFVs laden with cocaine for Central America and on to the United States. After defendant Agresott Salas confirmed that it would be Zapata, co-defendant Sepulveda Mona told him to organize everything.

On June 17, during a lawfully intercepted phone call defendant Agresott Salas said to an unidentified subject, "from here we are going to leave." In another call that same day, co-defendant Sepulveda Mona told an unidentified male to not forget to buy three balaclavas (balaclavas are masks typically used by those physically present at the dispatch point to protect against weather conditions or as an attempt to shield one's identity.

A witness involved in the shipment stated that co-defendant Jesus Jhormen Mosquera-Quinto worked with co-defendant Agresott Salas and would handle day to day logistics. The witness stated that co-defendants Agresott Salas and Mosquera-Quinto and others were present at the departure of the GFV.

After the seizure on June 19, 2021, during lawfully intercepted phone calls, defendant Agresott Salas asked co-defendant Sepulveda Mona if he was going to send money in order to give to those captured (arrested on the GFV). In another phone call, co-defendant Sepulveda Mona and defendant Agresott Salas discussed the best way to pay the lawyers and the judge, in order to get the captured subjects to receive house arrest during their sentencing hearing.

Additional loads were interdicted as part of the investigation into the DTO including but not limited to the following:

### B. November 8, 2021, Seizure of 195 kilograms of cocaine

On November 8, 2021, the Columbian Navy in conjunction with the Colombian Coast Guard interdicted a GFV approximately 25 miles northwest of Sapzurro, Colombia. Colombian authorities seized approximately 195 kilograms of cocaine and arrested four crewmembers. The GFV vessel laden with cocaine was destined for Central America with the cocaine destined for the United States. Through lawfully intercepted communications before and after the interdiction as well as witness statements, Colombian authorities tied the shipments to defendant Agresott Salas and others including co-defendant Mosquera Quinto.

### C. March 17, 2022, seizure of 1,606 kilograms of cocaine

On March 17, 2022, the Colombian Navy in conjunction with the Colombian Coast Guard interdicted a GFV containing cocaine enroute to Central America with the cocaine

destined for the United States. The GFV returned to shore and Colombian authorities seized 1,606 kilograms of cocaine and arrested two crewmembers. Through lawfully intercepted communications before and after the interdiction as well as witness statements, Colombian authorities tied the shipments to defendant Agresott Salas and others including co-defendant Mosquera Quinto.

The amount of cocaine attributable to defendant Carlos Mario Agresott Salas is not subject to precise calculation. The parties have agreed based upon the seizure and other information; the amount of cocaine attributable to defendant Agresott Salas is more than 450 kilograms.

## 5. STATUTORY PENALTIES

The defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty is as follows:

Counts I and II: imprisonment of not less than ten years and not more than life, a fine of not more than $5,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than five (5) years. Defendant understands that the mandatory minimum sentence for these offenses is ten years.

## 6. U.S. SENTENCING GUIDELINES (2023 MANUAL)

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### a. Chapter 2 Offense Conduct:

7

**(1) Base Offense Level:** The parties agree that the base offense level is level 38. Under Section 2D1.1 the amount of cocaine attributable to defendant Agresott Salas is more than 450 kilograms resulting in an offense level of 38.

**(2) Specific Offense Characteristics:** The parties agree to the following with respect to the application of Specific Offense Characteristics:

(a) 2 levels may be subtracted if defendant meets all of the criteria for application of the Safety Valve provisions under Section 5C1.2. The parties agree that defendant has met the criteria set forth in subparagraphs 2 through 5. A determination of whether defendant meets the criteria set forth in subparagraph 1 will be left to the U.S. Probation Office following a full record check. Defendant understands that he must satisfy all five criteria in order to receive the reduction.

**b. Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b) because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If the Government subsequently receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the Government may present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1 without violating the plea agreement.

**c. Other Adjustment(s)/Disputed Adjustments:**

8

**(1) Zero-Point Offenders:** 2 levels may be deducted if defendant meets all of the criteria for application of the Zero-Offender provision under Section 4C1.1. Defendant understands that he must satisfy all ten criteria to receive the reduction.

**d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 35 or 33 if either the safety valve provision or the zero-offender provision applies or 31 if both provisions are found to be applicable. .

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report. Depending on the underlying offense and the defendant's criminal history, the defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds the defendant is a Career Offender, the Total Offense Level will be higher and the Criminal History Category may be as high as Category VI. The defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein, and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made

9

herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records

pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

**b. Civil or Administrative Actions not Barred; Effect on Other Government Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against the defendant. Specifically defendant is not a United States citizen and can face deportation as a result of this conviction.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200.00, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant consents that the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such

Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS

In pleading guilty, the defendant acknowledges, fully understands and, hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; and the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the

waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT

After pleading guilty and before sentencing, if the defendant commits any crime other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or

untruthful information to the U.S. Probation Office, or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA**

Pursuant to Federal Rule of Criminal Procedure 11(c) and (d), the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

11/26/2024
Date

James C. Delworth
Assistant United States Attorney

10-22-24
Date

Carlos Mario Agresott Salas
Defendant

10-22-24
Date

John Stobbs, II
Attorney for Defendant

15